## CARLOCK v. UNITED STATES.
### No. 5185.

Court of Appeals of District of Columbia.
Argued Oct. 9, 1931.
Opinion Nov. 9, 1931.

James A. Davis, of Washington, D. C., for appellant.

Leo A. Rover, Henry H. Glassie, A. G. Lambert, and A. H. Bell, Jr., all of Washington, D. C., for the United States.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, HITZ, and GRONER, Associate Justices.

VAN ORSDEL, Associate Justice.

This appeal is from an award of the Supreme Court of the District of Columbia in a condemnation proceeding brought under the Act of March 1, 1929 (45 Stat. 1415 [40 USCA §§ 361–386]).

Without stopping to review the preliminary proceedings, the case was set down for trial on October 14, 1929. The property involved in this appeal is lot 802, square 256, improved by premises 408 Thirteenth Street Northwest, in the city of Washington. The appellant is the owner of an estate for years under a written lease. After the taking of the testimony and the charge of the court to the jury, the jury returned a verdict for the owner of the property in the sum of $32,000, and allowed appellant nothing for the value of his lease.

Appellant's lease was to run for the term of ten years, from the 1st day of January, 1928, on a rental of $600 for the year 1928 and a like sum for the year 1929, thereafter the rental was increased annually on the ratio of $60 per year, culminating in the amount of $1,080 for the year 1937, or the last year of the lease. It also contained the following provision: "And it is further agreed that the parties of the second part in consideration of this lease hereby agree to remodel the said premises, according to plans and specifications agreed upon between the parties hereto, which plans and specifications may be modified by mutual agreement between the said parties, said improvements to become part and parcel of the said premises, 408 13th Street Northwest, Washington, D. C., and it

is further agreed that the said repairs be commenced during the month of November, 1927, and completed, as far as practical, before the commencement of said tenancy January 1, 1928."

■ We are not impressed with the contention of counsel for the government to the effect that the tenant is not entitled to any consideration or remuneration for the improvements which he placed upon the premises, since the improvements revert to the owner at the termination of the lease. The expenditures for improvements undoubtedly were. a part of the consideration entering into the contract for the leasing of the property, and presumably reduced to a considerable extent, at least the monthly rentals named in the lease. These expenditures for improvements were made by the tenant on the basis of the ten-year lease and the enjoyment of the benefits to be derived therefrom for that period. This does not mean that appellant is entitled to compensation for the cost of the improvements, but only to the extent that they have enhanced the market value of the lease over and above the obligations of the lease. To that extent they become an item of value to be considered in fixing the value of the. lease. The only obligation that a purchaser of the lease would assume would be the making of certain repairs specified in the lease and the payment of the monthly rental for the use of the property in its improved condition. Less than two years of the lease had expired at the time the property was taken by the government. The purchaser of the lease on the open market would, therefore, derive the benefits of the improvements without additional expense for the unexpired eight years of the lease. It follows that these benefits are of equal value to appellant and should be considered in fixing the value of his lease. In other words, in determining the market value of the lease, after the expiration of two years, the value of the improvements to the premises for leasing purposes for the remaining eight years would be a proper matter for consideration.

■ It is a fundamental principle, governing condemnation proceedings, where several interests are involved, such as estates for life, or in remainder, or leaseholds, or in reversion, in the property to be condemned, all should be combined in determining the value of the fee, after which the total value of the fee can be subdivided in satisfaction of the values fixed upon the various interests involved. This rule was well expressed in a prayer submitted to the jury as follows: "If

there are several interests, as estates for life, or in remainder, or of leasehold, or in reversion, in any of the land to be condemned, the proper course is for the jury to ascertain the market value, if any, of the fee simple entire, not divided into successive interests but as if belonging to one person. Said fee simple values shall then be distributed between the successive interests by determining the market value, if any, of the estates for life or leasehold, and then deducting the value of the same from the value of the fee simple to determine the value of the estate in remainder or reversion."

The proper rule governing condemnation proceedings in cases of this sort is stated in Mayor & City Council of Baltimore et al. v. Gamse & Brother, 132 Md. 290, 293, 104 A. 429, 430, cited in the brief of counsel for the government, where the court said: "In proceedings instituted to condemn the reversionary interest, as well as the leasehold interest, the rule is to ascertain the entire compensation to be allowed as though the entire title or estate in the property belong to one person, and then apportion the sum between the holders of the different interests, according to their respective rights. Baltimore City v. Latrobe, 101 Md. 629, 61 A. 203 [4 Ann. Cas. 1005]. As was said by this court, speaking through Chief Judge Boyd, in the case last cited: 'The condemning party, as a rule, ought not to be required to pay for the two interests more than the portion taken would be worth if owned by one person. * * * The jury, or other tribunal authorized to make the award, should always keep the value of the entire property in mind, and should limit the whole amount to be paid to that value, unless it is clearly shown that the lessee is entitled to more than the difference between what they allowed the reversioner and what the whole property would be worth in the market, if there had been no ground ' rent.' When the entire property included in a lease is taken, the question is one of comparatively easy solution, although there may be, as in this case, two separate estates therein, held by different parties. In such cases the rule stated above may ordinarily be applied without difficulty."

■ The universal rule, governing condemnation proceedings, that the market value of the property condemned at the time of the award should control in fixing the amount of the award, was clearly expressed in the ninth prayer submitted to the jury in the present case as follows: "The present money value of a leasehold interest is the present market

value of the residue of the term yet to run with reference to the most valuable use or uses to which the same may be lawfully put; that is, what would be its present money worth over and above the obligations of the lease, to an assignee or purchaser willing and able to assume and perform the obligation of the lease for the residue of the term after the return of the award."

Had the court stopped here, the case would have gone to the jury upon a proper theory of the law, but it was followed by other instructions which we think erroneous and so in conflict with those above cited and so foreign to any sound principle of law that the award in this case cannot be upheld.

The court submitted to the jury the following prayer offered by counsel for the government: "When the unexpired residue of a lease is to be appraised, the jury will determine its present fair market value in accordance with Instruction IX; and then, if they find it has present market value, they will state the amount that such sum is to be reduced per month, from the first rent day following the return of the award until the actual taking of the property by the United States; and, if such term expires before such actual taking, there shall be no allowance for such leasehold interest."

The court, in its general charge to the jury, stated as follows: "You will find first the value of the property, and then apportion each part. Find what, if any, is the value of that lease. That is, if you find it to be of any value. Then you must find how much that value must be reduced from month to month. Suppose that the lease has a year to run, and you find it to be worth $1,200.00. It would not be worth as much at the end of six months as it is now, or seven or eight months. And there would come a time when it would not be worth anything. If you find a value for the leasehold, then you must find how much it should be reduced each month during the term, and when you have found those facts you should return your verdict."

The value of the leasehold should be fixed as of the date of the award. The award cannot be suspended in thin air, awaiting the future contingency of when the government may see fit to occupy its property for the purpose for which it was taken in condemnation. If a fixed period elapses subsequent to the making of the award, during which the government has no use for the property it can lease it; but the appellant cannot be compelled to continue his lease for the purpose

of fixing the ultimate amount of his award, or for any other purpose. He did not contract with the government and possibly might not choose the United States as an agreeable landlord.

The course followed in the present case tends to interminable confusion, and to a total disregard of the tenant's contractual rights. In condemnation cases the courts will scrutinize closely the proceedings to protect the rights and interests of the parties involved. As we said in Lynchburg Investment Corporation et al. v. Rudolph et al., 40 App. D. C. 129: "In matters affecting private property rights of persons, companies, or corporations, where it is sought to take it for the public good, liberal construction should be indulged in favor of the parties thus affected, and every step required to be taken by the public officials in thus subjecting private property to public use must be literally followed."

The court is directed to set aside and vacate the award of the jury in so far as it relates to the value of the lease; to grant a rehearing for the determination of the value of the lease as of the date of the award, and the value, if any, so found should be deducted from the total value of the fee as found in this case. Reversed and remanded.