## UNITED STATES v. ENTIRE FIFTH FLOOR IN BUTTERICK BLDG., BOROUGH OF MANHATTAN, CITY OF NEW YORK, et al.

District Court, S. D. New York.
March 9, 1944.

Harry T. Dolan, Sp. Asst. to Atty. Gen., for petitioner-plaintiff.

Ridgway, Ridgway & Slote, of New York City, for defendant H. D. Catty Corporation of New York.

BRIGHT, District Judge.

The Government, by petition filed June 29, 1942, sought to condemn the use and occupancy of "the entire fifth floor, together with all permanent partitions therein of the Butterick Building, at 161 Sixth Avenue, New York City, together with the right of ingress and egress thereto", for a period of three years from the date of the surrender of possession to it. On the same day it obtained an order for the immediate possession of the premises, together with the right to improve the same, and reserving to it, or its assignees, the right to remove all equipment and fixtures placed therein by it during the term of said possession and occupancy. In a declaration of taking signed by the Acting Secretary of the Navy on February 12, 1943, and filed March 24, 1943, the use to which the property was to be put was stated to be for the expansion of the Guided Radio Corporation to be used in connection with the construction of ships or portions thereof for the Navy; and the estate to be taken was stated to be the use and occupancy for a period beginning June 29, 1942 to June 30, 1943, with the right to renew annually for the duration of the present states of war and one year thereafter, upon giving notice to renew sixty days prior to the expiration of any term, and the right to cancel said use and occupancy upon the giving of sixty days' written notice to the owners of the property. The right to improve the premises and the right of the Government, or its assigns, to remove all equipment and fixtures placed thereon during its or their possession, were also reserved. Twelve thousand dollars was deposited in this court as the estimated just compensation for the taking. On April 23, 1943, an order was made amending the petition for condemnation so as to conform to the taking stated in the declaration aforesaid.

The defendant H. D. Catty Corporation of New York was the tenant in possession of the fifth floor, when this proceeding was commenced, under a lease dated January 14, 1937, which was to run from May 1, 1937, to April 30, 1947, at an annual rental of $8,842.50 until April 30, 1942, and $10,611. annually for the balance of the term. The lease contained clauses providing, among other things, that all alterations, additions or improvements upon the demised premises made by either party, including all panelling, decorations, partitions, railings, etc., shall, unless the landlord elect otherwise, become the property of the landlord at the end of the term; and further, that if the demised premises shall be taken or condemned by any competent authority, the term of the lease shall cease from the date when possession of the part taken shall be required and without apportionment of the award.

When this proceeding was commenced, said defendant concluded to consider its tenancy terminated under this latter clause, but subsequently changed its position and is now claiming, without opposition of the landlord, any award to be made in this proceeding. It moved its machinery and equipment to its factory in Norwalk, Connecticut, and its office equipment to 200 Madison Avenue in New York City.

The Butterick Building is situated on the northwest corner of Sixth Avenue and Spring Street, was built in 1901, and was designed specially for the Butterick Company. The fifth floor contains 18,450 square feet of space, is served by four freight elevators and three passenger elevators and has windows opening on Sixth Avenue on the west, Spring Street on the south and Van Dam Street on the north. It is a substantial and fine appearing build-

ing that would cater to people requiring office space for use with factory space. It has an entrance such as used in office buildings, is in an excellent location, near the Sixth Avenue Spring Street station of the subway and not far away from the subway on Varick Street, and the floor in question has unusually good lighting, and all of its windows have unobstructed light and air.

The time of the taking by the Government and at which date the fair value is to be determined is June 29, 1942. The lease under which the defendant tenant was then in possession was upon the basis of about 48¢ per square foot for the first five years of the term, and 57½¢ per square foot for the balance of the term, an average of .528¢. The value estimated by the Government by its deposit in this court is upon the basis of about 65¢ per square foot.

It was not disputed that since Pearl Harbor there has been an increased and increasing demand for space such as herein questioned, and that on June 29, 1942, there was not a great deal of space such as this available for renting. It is also undisputed that there has been a substantial increase in the rental value for space of this kind between 1940 and 1942 because of the war, amounting to a 10% increase between 1941 and 1942 and an additional raise of 10% between 1942 and 1943; and that a greater rate of rent is charged for a part of a floor than for the whole floor space.

It was also established without substantial dispute that the defendant has since this lease was made in 1937, improved the premises by the installation of gypsum block and wood and glass partitions, by painting the partitions, by the installation of electrical equipment and a switchboard, by the putting down of linoleum in its office and by the installation of Venetian blinds in the office and wooden bins in other parts of the leased premises, all to its cost of $6,719.29. It was also proven that it spent in the removal of its office equipment to Norwalk, Connecticut and to 200 Madison Avenue, New York City, the sum of $3,867.01.

The defendant now makes claim in this proceeding for the sum of $24,600, which it claims is the rental value of the premises taken on June 29, 1942, for the period from that date to June 30, 1943, for the sum of $6,719.29 for the installations aforesaid, and for the sum of $3,867.01, its moving expenses.

There was the usual dispute between the witnesses as to the rental value.

Defendant's witness testified that in his opinion the fair rental value of the fifth floor on June 29, 1942, taking into consideration the right of renewal and the privilege to cancel at any time on sixty days' notice, was $24,600 for twelve months, or at the rate of $1.28 per square foot; and that the same rate would apply for the second or third years, $11,070 for the fourth year at 60¢ per square foot, and nothing for the fifth (the defendant's lease, as has been noted, had five years to run at the time of taking). He allowed no rent for the fifth year because, as he testified, the landlord calculates a period of vacancy and includes that possibility of that loss in the rental for previous years. He further testified that about 50% of this figure was penalty because of the uncertainty of the duration of the term (he corrected this by rebuttal by stating that it was not a penalty but that he meant that the reasonable value was greater for the first period because "we charged the vacancy off as being included in the value"); that he placed 85½¢ per square foot as the value of the space and the balance was what he first termed as penalty, and 5½¢ was included for the use and occupancy for the installations made by the defendant. He arrived at the 5½¢ by taking one-fifth of $6,719.29, spent for improvements, which would be $1,343.85 per year, which divided into one-half, because the tenant had used it for one-half the period, was $671.92 per year for the principal, to which he had added $335 (5% annual interest on the $6,719.29), a total of $1,006.92, which he decided was the value per year for the use and enjoyment of the installations, or 5½¢ per foot additional for the space occupied. His testimony as to space in the neighborhood in other buildings on leases made in 1942, ranged in value from 42¾¢ to 75¢, one lease being for 85¢ the first year and 72¢ a year thereafter.

The witness called by the Government stated that in his opinion the fair rental value of the fifth floor for the year in question was $11,070, or 60¢ a square foot. He gave the rents of all of the floors in the building. Under leases made in 1940, 1941 and 1942, they range from 53.9¢ a square foot to 59½¢ a square foot, for a whole floor (there is one lease made in 1942 for one year at the rate of 65¢), and at 60.1¢ for part of a floor. In the leases made

prior to 1940 the rents range from 52.7¢ a square foot to 59.9¢ for a full floor, and 67.3¢ for part of a floor. He also testified as to other buildings in the vicinity that the rentals range from 70¢ to 80¢ per square foot. He further testified that in his opinion the fact that the use was being taken from a tenant already there and whose lease had five years to run, did not change the situation, that he had taken into consideration the fact that there was a sixty day right of cancellation and that, therefore, the defendant would be uncertain as to when he might get the property back on his hands, but that that would not increase rental value in the market in 1942 because the property would not remain vacant for any period and would be snapped up immediately because of the demand for space. He based his judgment also upon the fact of his experience in similar rentings because he testified his firm had leased more space to the Government in New York City than any other firm, practically all of the leases had a sixty day cancellation clause in them, and they commanded no higher price because thereof than other leases, primarily because of the responsibility of the tenant, and secondarily, because short term leases were desired in a rising market for loft space.

In the determination of the fair rental value of the use of this floor for the period from June 29, 1942, to June 30, 1943, I do not think there can be taken into consideration the use of the partitions or other improvements which the defendant placed therein prior to the commencement of the term, for three reasons: (1) The Government under the requisition made by the Secretary of the Navy, is authorized to condemn and take only the use of the floor space and "permanent improvements", and the partitions and electrical work, painting, linoleum, Venetian blinds and wooden bins are not such; (2) the lease under which the defendant entered into possession of the premises specifically provides, absent the election otherwise of the landlord, that the partitions, etc., mentioned, shall belong to the landlord at the end of the term of the lease (the case of Carlock v. United States, 60 App.D.C. 314, 53 F.2d 926, is not otherwise because there the fee was taken along with the interest of a lessee and it was held that the value of a lessee's interest, with improvements, which were actually taken and used should be paid to the lessee); and

(3) there is no proof that the Government has actually taken the improvements mentioned, they are there if the defendant cares to get them and the Government apparently makes no claim and is not using them. So far as appears by the evidence, the partitions, floor covering and other improvements have been taken down and stored in the premises and are awaiting the defendant whenever it cares to remove them. There was no obligation on the part of the Government to deliver them and the defendant does not appear to have made any effort to demand them or to get them. Even had the Government appropriated them, it does not seem to me that the defendant would have been entitled to any award here because neither the petition nor the judgment in condemnation authorizes their taking. If it were the fact that the Government had appropriated the defendant's improvements, in other words, converted the same to its own use, the liability, if any, would have to be established in some other action. United States v. 16.747 Acres, D.C., 50 F.Supp. 389.

Nor do I think there can be any award for any depreciation in value of those improvements caused by their removal from the premises, nor for expenses in removing plant and equipment. Pacific Live Stock Co. v. Warm Springs Irrigation Dist., 9 Cir., 270 F. 555–559; Gershon Bros. v. United States, 5 Cir., 284 F. 849; Bothwell v. United States, 254 U.S. 231, 41 S.Ct. 74, 65 L.Ed. 238; In re Post Office Site in Borough of the Bronx, 2 Cir., 210 F. 832.

As to the rental value, I find that the fair market rental value for the term from June 29, 1942, to June 30, 1943, is 65¢ per square foot. The fact that the tenant is paying but 57½¢ per square foot is not a fair criterion of the market value; both sides agree that space in that vicinity has increased in value since Pearl Harbor. Olson v. United States, 292 U.S. 246, 255, 54 S.Ct. 704, 78 L.Ed. 1236. But I cannot agree with the contention of the defendant that it is entitled to an increased value because of the uncertainty of the term, or because of the sixty day termination clause. The measure is, what was the fair market rental value for one year on the 29th day of June 1942, and there can be no loading into that value the possibility of vacancies occurring (1) at the end of the defendant's lease because the value is not to be fixed

anticipating that termination, and (2) because the demand for such space was very high on the date of possession and the possibility of vacancy very remote. It seems to be uncontradicted, too, that in such a market short term leases are more desirable than long ones.

An award will be made to the defendant of $11,992.50 for the use of the premises from June 29, 1942, to June 30, 1943.