## UNITED STATES v. 250 ACRES OF LAND, MORE OR LESS, IN NUECES COUNTY, TEXAS, et al.

## SAME v. 245.7 ACRES OF LAND, MORE OR LESS, IN NUECES COUNTY, TEXAS, et al.

### Nos. 166, 171.

District Court, S. D. Texas, Corpus Christi Division.

March 26, 1942.

C. U. Landrum, Asst. to the U. S. Atty., of Detroit Lakes, Minn., Eugene J. Wilson, Sp. Asst. to the Atty. Gen. and Luther E. Jones, Jr., and Willett Wilson, Sp.

Attys., both of Corpus Christi, Tex., for petitioner, United States.

William H. Shireman and Boone, Henderson, Boone & Davis, all of Corpus Christi, Tex., for defendants.

KENNERLY, District Judge.

These are suits filed November 14, 1941, and November 18, 1941, respectively, by the Government of the United States under Sections 257 and 258 and Sections 258a to 258e, of Title 40 U.S.C.A., to take for the public use, certain tracts of land in this District and Division. Upon the filing of a Declaration of Taking, and the deposit of funds in the Registry of the Court as provided in said Sections, a Decree vesting title in the Government, and placing the Government in possession, was entered, and Commissioners appointed to hold hearings, and find and report the value of the land, to the end that the funds so deposited be disbursed to the land owners. This is a Motion by the Government, filed March 5, 1942, to give instructions to the Commissioners with respect to the performance of their duties,[1] which Motion, and particularly Paragraph 3 thereof, prohibiting the valuing of separate ownerships, the land owners oppose.[2]

The suits are two of many similar suits at this Division, and the same Commissioners, a member of the Bar of this Court, a relator, and a lumber dealer, have been appointed in each case. In some of the suits, hearings have been held and full or partial reports made by the Commissioners, and in other suits, no hearings have been held. The procedure after reports are filed by the Commissioners is that any interested person may except to the report, which exception brings about a trial de novo before the Court or a Jury on the questions involved.

1. Under the Law (Sections 258 and 258d), the proceedings here and before the Commissioners, insofar as there is no applicable Statute of the United States, are governed by the Statutes of Texas relating to Eminent Domain (Title 52, Articles 3264 to 3271, Vernon's Civil Statutes of Texas), and the decisions thereunder. Whatever may be the procedure in other States, it is clear that the procedure in Texas Courts under such Texas Statutes is that instructions may be, but ordinarily are not, given by the Court to Commissioners. This is probably true because the Texas Statute is brief, plain and simple, and is of itself a sufficient guide to the Commissioners. Upon consideration of the applicable and similar United States Statutes and the decisions of the United States Courts and the Texas Statute and decisions thereunder, I am convinced that whether instructions should be given to the Commissioners in these cases is within the sound discretion of the Court.

2. Coming now to the question of whether the Court, in the exercise of its sound discretion, should give the instructions which the Government asks be given.

In the oral argument of the Government's motion, the matter of hearings and proceedings before the Commissioners and the nature of their report in other similar cases were gone into and discussed by counsel on both sides, and Judge C. O. Hamlin, Chairman of the Commission, appeared and outlined for the Court the procedure followed by the Commissioners.[3]

---

[1] The authorities cited by the Government are as follows: Devou v. City of Cincinnati, 6 Cir., 162 F. 633; Carlock v. United States, 60 App.D.C. 314, 53 F. 2d 926; United States v. Meyer, 7 Cir., 113 F.2d 387; Guste v. United States, 5 Cir., 55 F.2d 115, 116.

[2] The authorities cited by the land owners are as follows: Sections 257, 258, and 258a, et seq., Title 40, U.S. C.A.; 16 Texas Jurisprudence 696 (Paragraphs 93, 95, 97, 98 and 99); Rhine v. City of McKinney, 53 Tex. 354; City of Paris v. Tucker, 101 Tex. 99, 104 S.W. 1046; Articles 3264 and 3265, Vernon's Civil Statutes of Texas; County School Trustees v. Free, Tex. Civ.App., 154 S.W.2d 935; U.S. Con-

stitution, Amendment 5; Rabb v. La Feria Mut. Canal Co., 62 Tex.Civ.App. 24, 130 S.W. 916; Easter Oil Corp. v. Wilbarger County, Tex.Civ.App., 30 S. W.2d 438; Olson v. United States, 8 Cir., 67 F.2d 24; Id., 292 U.S. 246, 54 S.Ct. 704, 78 L.Ed. 1236; Texas Co. v. Daugherty, 107 Tex. 226, 176 S.W. 717, L.R.A.,1917F, 989; Article 3265, Revised Civil Statutes of Texas; Wilson v. Newton County, Tex.Civ.App., 269 S. W. 227; City of Mart v. Hasse, Tex. Civ.App., 281 S.W. 318; State v. Lowrie, Tex.Civ.App., 56 S.W.2d 676.

[3] Mr. Hamlin's statement is as follows: "Mr. Hamlin: If your Honor, please, I am C. O. Hamlin, one of the Commis-

An examination of the Commissioners' reports in some of the other similar cases and a consideration of the whole matter convinces me that instructions need not be given in these two cases unless and until asked by the Commissioners, or deemed by the Court appropriate to do so.

3. This view makes it unnecessary to discuss the different matters covered by the proposed instructions, except that it seems appropriate to pass upon the following, found in proposed Instruction No. 3 in both cases:

"You are instructed that the United States of America in this case is condemning the fee simple title, subject to existing public utility easements, if any, and rights of way for public roads and highways

sioners. Would it be out of line for me to state the Commissioners' position before your Honor at this time?

"The Court: Yes, sir. Go right ahead.

"Mr. Hamlin: If your Honor, please, let me state at the outset that we Commissioners appointed by this Court will welcome any instructions this Court sees fit to give us, but I do think Mr. Wilson has made some rather unfair reflections upon this Commission. It so happens that I am the only attorney on the Commission. As your Honor knows, one of the other two is in the real estate business and the other in the lumber business. There are questions of admissibility of evidence that come up from time to time, and I have never seen fit to override my colleagues on the Commission. If they want to hear certain evidence, I feel, in fairness to them and to the parties concerned, that I should let that testimony in. May I illustrate it this way: This land has been taken from farmers. They come in here, some of them not represented by counsel. They feel that they are entitled to state to the best of their knowledge the value of their land, its market value.

"Now we have been instructed to find, and we have consistently found, the values as the market value at the date the Government took the land. Those instructions have previously been given to us and that is the only instruction, as I remember in the case stated by Mr. Wilson, that the Court gave to the Commissioners.

"The Court: Did we give instructions in this case?

"Mr. Hamlin: Yes, sir. Mr. Wilson prepared at great length some instructions as to market value as of the date of taking and the decisions holding what 'market value' was. I am not sure whether your Honor gave that, but I do remember your Honor stated at the time you swore us in that you would not give instructions in detail and you told the story about the Alcalde; if we made a mistake, let it be according to law, and so forth. We have endeavored to do that.

"The Court: There have been no formal instructions adopted by either of the Judges?

"Mr. Hamlin: No, sir. Mr. Wilson attempted to get Judge Allred to do what he is attempting to get you to do, the last time Judge Allred was over here, and he refused to do so. But we have stated to Mr. Wilson, and we state to your Honor, we welcome such instructions as your Honor thinks proper, because we are trying to be fair to the Government, to the land owners, and to ourselves.

"I made some notes while Mr. Wilson was speaking on matters that I would like to call attention to. He said we ought to consider legal evidence. That is true, and we try to consider legal evidence, but in a trial consuming some several days, with many witnesses, a witness will make a statement that would not be legally admissible in Court, of course. He doesn't give us credit, perhaps, of disregarding their testimony. He seems to think we are motivated and reach our award based upon inadmissible testimony and not admissible testimony. We have consistently found the total value of property, as Mr. Wilson is insisting we should. In other words, as an illustration, here is a tract of land of 250 acres. That 250 acres had an oil and gas lease on it. Naturally, an oil and gas lease is an interest in real estate and has a value. There is a mineral interest. That has a value. There is a farming interest in this tract of land. In reaching our award, we considered all those elements of value, and we said the total award in that case was $38,000. We then stated, and this is for what we consider the benefit of this Court who may eventually try the case, that to the oil and gas leasehold interest out of the total award shall be paid $3750, to the owner of the farm leasehold interest $750, and we didn't add that to the total award. The total award was first arrived at by the commissioners and then we deducted from that the other outstanding interests in the title. Mr. Wilson says we have no concern with that. Possibly we don't.

along the north and east boundaries of the property described in the Declaration of Taking. It is your duty to assess the value of the land taken as an undivided fee simple absolute, without regard to whatever separate ownerships existed in the property on the date of the taking."

Where there are separate ownerships in the land as, for instance, where one person owns the minerals and another person owns the surface, or one person owns a farm or pasture lease and another person owns the balance of the title, the proposed instruction is clearly wrong.

---

He says that is a matter for legal ascertainment by this Court, but your Honor raised that question a moment ago with Mr. Wilson. We take this position: We don't attempt to pass upon the legality of titles. In other words, if there were two concerns in here claiming an oil and gas lease upon the property, we would not for a moment attempt to say who was the legal owner, but we would say that the ⅞ths oil and gas lease had a certain value—that is a factual finding—and then the Court could decide who was entitled to the money we had awarded, but as your Honor suggested, and as I have suggested from the Commissioner's Bench many times to Mr. Wilson, if we didn't break this down into the separate interests in real estate, then it is going to necessitate every one of these cases being appealed to the Court and being tried de novo, when there is a rare possibility that both sides might agree, as they did in the case of the judgment entered by your Honor this morning. Otherwise, it would be a waste of time on our part if the Court had to hear all the evidence again, even though the parties wanted to agree to our findings, and to ascertain how much should be paid this interest holder and how much should be paid that interest holder.

"Mr. Wilson has stated before this Court and before Judge Allred that the Commissioners' proceedings were held in utmost confusion. We have attempted to conduct them in a legal and decorous manner. We swear the witnesses, hear the witnesses, and exclude them under the rule when requested. I don't see where he gets that idea, that there is the utmost confusion.

"Then he stated, I remember in particular, that we had made separate findings as to the value of trees. I know the case he is talking about. It is out here in the Flour Bluff territory. It was improved property and had some very valuable palm trees on it. There was testimony about the value of the improvements and the value of the trees to enhance the value of the property. We never for a moment, and he has no award where we have said, 'the value of trees, so much,' and 'the value of the

property, so much.' We found in that case the total value of that improved property, taking into consideration the enhancement of value that the trees made to it, and the buildings upon it of so much money, and that is all we did in that particular case.

"Now we had a recent case here just last week where we made a total award of $38,390. We stated the market value of the land, and that included all interests, the mineral interest and the surface interest—I should have said $39,250—and we found in addition to that that that land owner was entitled to a severance damage of $2,140, and I believe the Government's own witnesses testified that that was a fair value for the severance of his farm. Out of the market value of the land, we found that the oil and gas leasehold owner was entitled to $3,750. That comes out of the land owner's part. That is not an added cost to the Government.

"Then he spoke about us going out and looking at the land. That is true; we do go out and look at the land, and every time we have gone out and looked at the land, it has been in company with some representative of the Navy Department. They have furnished the transportation for the purpose of our going out. We hear testimony, and the Government puts on experts to testify, as to the value of the land, and they put in maps showing that out of 250 acres, there are 180 acres of good land, 20 acres of swale land, and 50 acres of wash land, and we go out there to see it personally, to see if there are 180 acres of good land, 20 acres of swale land, and so much wash land.

"Your Honor spoke of timber. With respect to one tract we had recently, a part of it was in timber and part of it was in cultivation. The timber doesn't enhance the value of the land, because that is mesquite timber. We went down there to see the land in order to lessen the value because of the timber and not to increase it. I wouldn't want your Honor to think that we have gone out to see the land surreptitiously, because in every instance there has been a representative of the Government with us.

"The Court: As I understand you,

■ The Statutes of the United States and of Texas, indeed the Federal Constitution itself, contemplate that when private property is taken for public use, the owner or owners, if there be more than one owner, must be compensated, and such compensation cannot be made except by determining under the Statutes the value of the property taken from each owner. It is clear that in all cases, the Commissioners should hear and report not only the value of the entire title taken in a tract of land, but also the value of each separate interest, ownership, or claim therein. The assumption that the Commissioners in so doing would find a greater value for the whole tract than they would if they proceeded as indicated by the suggested rule is without merit.

I think the motion for instructions should be denied, but the way left open for the Court to give instructions if, as, and when the Commissioners ask instructions, or it is deemed by the Court appropriate to give them.

Let an order be presented, disposing of the motion accordingly.

---

there have been many of these land owners appear without counsel?

"Mr. Hamlin: Yes, sir. They bring their friends and neighbors in with them.

"The Court: And I suppose they are not skilled in the matter of admissibility of evidence.

"Mr. Hamlin: That is right, and if we were to say—Well, your Honor knows how hard it is to qualify a man on market value, strictly and legally to qualify him. That could only be done in the case of a man who deals in the sale of real estate, a real estate man. These farmers come in and counsel ask them, 'Do you know the value of your land as of a certain date?'

"Of course, the Government objects, but if we didn't permit that farm owner and his friends and neighbors to testify to that value, they would think they weren't having the opportunity to present their evidence in court. If we are satisfied that they are not acquainted with the market value, we don't take that into consideration, even though they have testified to it.

"Mr. Wilson said that we permitted a witness to testify that he would have made six bales of cotton on a certain tract of land. I don't have the same recollection Mr. Wilson does on that. I remember the case he is talking about, and the man testified he had made six bales of cotton and when the Government took the land, there were some two bales that he was unable to pick.

"Mr. Wilson spoke about moving some cows and some ensilage. In that case, the tenant did have a farm lease and he had some 1100 or 2000 tons of ensilage on the land when the Government took it which he was not able to get out. There was some testimony to the effect that he could have gotten it, but nevertheless the cost of getting it and hauling it to his new place was more than the ensilage was worth, and we did take that into consideration, but that comes out of the land owner's award.

"I just want to state, in defense of myself and the other Commissioners, that we may be proceeding in utmost confusion, but it is not intentional on our part, and we will welcome such instructions as this Court sees fit to give us."