**UNITED STATES v. 1.87 ACRES OF LAND IN CITY OF PHILADELPHIA, PHILADELPHIA COUNTY, PA., et al.**

No. 8852.

Circuit Court of Appeals, Third Circuit.

Argued Oct. 5, 1945.

Decided March 26, 1946.

Rehearing Denied May 17, 1946.

Roger P. Marquis, of Washington, D. C. (J. Edward Williams, Acting Head, Lands Division, Department of Justice, of Washington, D. C., Gerald A. Gleeson, U. S. Atty., of Philadelphia, Pa., and C. James Todaro, Sp. Asst. to Atty. Gen., on the brief), for appellant.

Wm. Clarke Mason, of Philadelphia, Pa. (Wm. E. Lingelbach, Jr., and Morgan, Lewis & Bockius, all of Philadelphia, Pa., on the brief), for appellee Baldwin Locomotive Works.

Robert T. McCracken, of Philadelphia, Pa. (Earl Jay Gratz and J. Maurice Gray, both of Philadelphia, Pa., on the brief), for appellee North American Warehousing Co.

Before ALBERT LEE STEPHENS, MARIS, and GOODRICH, Circuit Judges.

STEPHENS, Circuit Judge.

The United States is appealing from a judgment of the District Court of the United States for the Eastern District of Pennsylvania in a proceeding instituted by the government for the condemnation of the fee simple of 1.87 acres of improved, industrial real property lying in the City of Philadelphia, Pennsylvania.

Claims of error are presented to us in the form of three questions.

Question 1. "In submitting to the same jury at the same time the question as to amount of compensation payable by the United States for the entire property and the question of distribution of that award between the fee owner and the tenant; and whether, under the instructions given to the jury, confusion as to the process to be used probably resulted to the prejudice of the United States."

The property being taken by eminent domain proceedings was under lease by the owner, Baldwin Locomotive Works Company, to North American Warehousing Company (both corporations).

The court at the trial, and with one and the same jury, received evidence as to the over-all value of the property in question, that is, as to the fair market value of the fee simple, without encumbrance or other outstanding interest in it. The court then proceeded to take evidence as to the value of the unexpired portion of North American's lease. No objection was made prior to a motion for a new trial to this procedure.

When the value of North American's interest was being heard, counsel for the government properly indicated that this issue was between Baldwin and North American, since the government would pay for the full value, and the payment would be divided between the owner and the interest holder, the owner taking the whole amount to be paid less the value of the leasehold interest. United States v. Certain Lands in Mempstead, etc., 2 Cir., 1942, 129 F.2d 918. The government rightly states in its brief that it had no direct concern with division of the award between lessor and the lessee. United States v. Cer-

tain Lands in the Borough of Brooklyn, 2 Cir., 1942, 129 F.2d 577, 579.[1]

The government, as it contended in its motion for a new trial which was denied, now contends that the procedure followed was erroneous, confusing and prejudicial to it and that "the two issues should have been separately submitted to the jury."

There is nothing in the record to the effect that the government objected to the taking of testimony of the leasehold value after testimony had been received as to the fee value. There is no showing in the record to the effect that the government informed the court that the fee-value issue should first be submitted to, and be decided by, the jury. At no time before the motion for a new trial was made was the court informed of the government's view that the issues should be submitted separately or that the Pennsylvania statute, requiring the fee and encumbrance values be tried together, should not be followed.[2] Notwithstanding, we treat of the merits.

 The Pennsylvania statute requires simultaneous submission in one proceeding of the issue of fee value and interest value in property under eminent domain proceedings and is purely procedural. The trial court did not commit error in following it. See United States v. Miller, 1942, 317 U.S. 369, 63 S.Ct. 276, 87 L.Ed. 336, 147 A.L.R. 55.

 The main complaint of the government is that by following such procedure, the jury was confused, that the instructions to the jury, referring to the different awards to be made, were confusing, and that a colloquy between the court and counsel in the jury's presence, immediately after conclusion of the court's charge, was cumulatively confusing to the jury.

In the course of delivering the charge to the jury, the court said:

"So you come, first, to the determination of the fair market value of that property in its entirety, and then your next approach is to evaluate the leasehold interest represented by Mr. McCracken and Mr. Gratz as counsel for the North American Warehousing Company. In evaluating that leasehold interest you are to determine the fair market value of the leasehold interest at the date of the taking, May 6, 1942. Taking into consideration those factors which are before you, you are to say what is the value of that leasehold interest as of May 6, 1942, and you subtract from that the rental reserved in the lease for a period of four years less the charges, and it is that figure, after you deduct from the value of the leasehold interest as of the date of the taking the rental reserved which is the fair market value of that leasehold interest."

The instruction, insofar as any issue here is directly concerned [3] is accurate and clear. Having followed it, the jury was in possession of two figures. One figure represented the unencumbered fee value. The other figure represented the leasehold value which was awarded to North American.

Some time following the above quoted part of the charge the judge further charged:

"Now, after you have determined that value [the unencumbered fee value] and the leasehold interest for a period of four years, you subtract that value from the value of the fee simple, *from what value you have awarded originally to Mr. Mason* [counsel for Baldwin], and that difference subtracted is what Mr. Mason [Baldwin] is entitled to, and the value of the leasehold interest which you determine is the value which Mr. McCracken

---

[1] The court ruled that consequential damages to North American, or in other words special damages incident to cancellation of the lease, would not be considered in the trial.

[2] Act of July 1, 1937, P.L. 2667, 26 P. S. § 44. Section 1 of the Act reads as follows: "That in all cases arising from the taking, injury, or destruction of private property under the right of eminent domain, where the owner or owners of the fee and any lessee or lessees under such owner or owners shall be claimants for damages, all such claims shall be heard or tried together; and there shall be awards by a board of review or verdicts by the jury on appeals, which shall fix, first, the

total amount of damage to the property in question, and second, the apportionment, distribution, or division of the total damages so awarded between or among the several claimants therefor."

In the instant case a "Board of View" appointed by the district court awarded Baldwin $509,405.21 and North American $315,594.79. All parties appealed.

[3] Counsel for North American contended at the trial that the court was wrong in appraising the leasehold value by its market value. Since there is no contention now between North American and Baldwin, that point is not directly in issue.

and his client [North American] are entitled to * * *."

While the italicized clause is not technically accurate, it seems clear to us that the instruction simply meant to be repetitious. However, a rather long colloquy between court and counsel occurred in regard thereto.

There were some inaccuracies in the extemporaneous remarks, but the problem before the jury on the immediate point under discussion was so simple and easy of understanding that we cannot asume that the jury completely misunderstood it. We do not find error as to this "question".

The point just treated is not entirely separate and independent of the government's "Question No. 2" which is as follows: "In holding and instructing the jury that the purchase was subject to a more than four years' lease term and in failing to instruct the jury that, as evidence of value of the property, the contract price was subject to only nine-month's occupancy by the tenant."

■ The trial court held that the leasehold interest for which North American was entitled to compensation extended for the full unexpired term of the North American's lease of four years, and so instructed the jury.

Upon the point raised in this question the court was acquainted with the view of the government, in the course of the trial, that the lease would only have nine months to run instead of four years. After the court had concluded its charge to the jury, government counsel indicated to the court that the instruction should have been for nine months instead of four years, at least so far as the evidentiary effect of the price in a contract of sale, to which we shall presently refer, is concerned. No instruction to that effect was ever offered or given.

The facts are that shortly before these proceedings began Baldwin contracted to sell the property to I. T. E. Circuit Breaker Company for the sum of $550,000, subject to the terms of the lease. This fact was put in evidence as bearing on the value of the property. The lease contained a provision that if at any time during the term of the lease the owner should enter into a bona fide agreement to sell the property to a third party, the owner should give notice thereof to the lessee, who should have the right within twenty days from receipt of the notice, to itself, purchase the property upon conditions as favorable as those given the third party. If the lessee should fail for the twenty days to notify the owner of his election to purchase, the sale could be consummated to the third party. If the sale should take place sixty-three months after its term began, which condition obtained here, the lessor could terminate the lease term upon giving lessee nine months' written notice of such action.

Baldwin gave North American the twenty day notice, and within the twenty days North American wrote to Baldwin, acknowledging receipt of the notice but without specifically making an election as to its intention to purchase or not to purchase. Instead it informed Baldwin that the Judge Advocate General of the Navy had sent a letter to it, saying that the Navy was considering proceedings in eminent domain to acquire the property. Baldwin replied to North American that it had no information as to any such intention of the government. The instant proceedings were begun soon thereafter.

The trial judge thought in the circumstances of the letter from the Judge Advocate General and the institution of the condemnation suit that the value of the leasehold interest should be assessed for the period of four years, that is, for the full term of the lease, unaffected by the purchase option provision of the lease.

We have already said that the valuation of the leasehold interest, or the period upon which it was assessed in the circumstances of this case, was of no direct importance to the government. However, the government claims that a logical explanation of the wide difference between the expert witnesses, the wide difference in the verdict and the sales price to I. T. E. centers on the extent of the leasehold and its value remaining to North American after the sales contract to I. T. E. The Baldwin experts valued the fee value at $900,000 and $950,000, while the government experts valued it at $475,000 and $495,000.

It is the logic of the government's position that by reason of the inaccurate statements in the instructions and of the counsel and court before the jury in the colloquy following, and because the two issues were tried simultaneously to the one jury, it is probable that the jury became confused. The conclusion reached by the government is that the jury in its confusion

failed to discriminate between the court's decision that the lease value to the lessee should be estimated to the end of its term and the lease value to Baldwin in the sale to I. T. E., which should be on the basis of nine months. If Baldwin sold with a leasehold interest standing against the property of four years, it would be reasonable for Baldwin to price its property at a figure considerably less than if a leasehold of only nine months was standing against it.

The government speculates on the course probably followed by the jury to the effect that the jury may have added the Baldwin sale price of $550,000 to the value of the leasehold interest of $370,000 and thereby arrived at a figure close to the fee value it found. This sort of straw-grasping necessarily places a very low estimate upon the intelligence of the jury, which we do not share, and furthermore, we know that we have no right to speculate so freely upon the reasoning pursued by the jury in arriving at its conclusions. See United States v. Dotterweich, 1943, 320 U.S. 277, 64 S.Ct. 134, 88 L.Ed. 48; Dunn v. United States, 1932, 284 U.S. 390, 52 S.Ct. 189, 76 L.Ed. 356, 80 A.L.R. 161.

We find no error in Questions No. 1 and No. 2, and it follows that there was no error in Question No. 3 since the only point raised in it is that the court erred in denying a motion for a new trial.

Affirmed.