EAGLE LAKE IMPROVEMENT CO. et al. v. UNITED STATES.

No. 11723.

Circuit Court of Appeals, Fifth Circuit.

March 5, 1947.

Rehearing Denied April 1, 1947.

Felix A. Raymer, R. E. Seagler, and Ralph B. Lee, all of Houston, Tex., J. R. Sorrell, I. W. Keys, and M. G. Eckhardt, Jr., all of Corpus Christi, Tex., Frank B. Lloyd and Jacob S. Floyd, both of Alice, Tex., and Ben H. Powell, of Austin, Tex., for appellants.

David L. Bazelon, Asst. Atty. Gen., and Wilma C. Martin and John F. Cotter, Attys., Department of Justice, both of Washington, D. C., for appellee.

Before HUTCHESON, HOLMES, and McCORD, Circuit Judges.

McCORD, Circuit Judge.

In 1940, by condemnation proceedings, the United States acquired title to 1,269.66 acres of land on Flour Bluff Peninsula, near Corpus Christi, Texas, for use in establishing the Corpus Christi Naval Air Station. The appeal is from a final judgment, entered on a jury verdict, awarding compensation for the taking of the property.

Three questions are presented: (1) Whether, when land upon which there are outstanding mineral leases is condemned in fee simple, it is error to admit testimony of the market value of the property as a whole without separating such testimony into mineral value and surface value; (2) whether the verdict is supported by the evidence; and (3) whether the trial court erred in denying a new trial on the ground of alleged misconduct on the part of jurors during deliberations of the jury.

The lands in question lie north and northwest of a number of oil-producing wells in the Flour Bluff Oil Field. Except for one dry hole, no wells had been drilled in the area taken. The southern boundary of the naval base was zigzagged to avoid the producing area of the field. Out of the eight parcels of land involved in this case, 878.55 acres had been leased by oil companies in 1936 for five year terms.

A former judgment awarding compensation was reversed by this court for the reason that the trial court had narrowed the issue as to mineral rights to re-recovery only in the event the jury found "that a reasonable probability existed that oil or gas in paying quantities might be produced." Eagle Lake Improvement Co. v. United States, 5 Cir., 141 F.2d 562, 564.

Two large volumes, containing almost 800 printed pages, comprise the record now before us. Most of the record is made up of the evidence. The Government's witnesses, over appellants' objection that the values of the different interests should be segregated, testified to the market value of each parcel of land as a whole, including the mineral interest. Both the condemnees and the Government introduced much evidence by expert geologists as to the possibility of producing oil from the lands condemned. This evidence covered a wide range. Some witnesses testified that the mineral interests were of great value; others testified that the mineral interests were of little or no value.

At the close of the evidence the Government moved to strike certain testimony, including all of appellants' testimony relating to the value of the minerals, on the ground that it set up a separate valuation whereas the issue was the value of the lands as a whole. The motion was denied. Thereupon, at appellants' request that the Texas practice regarding written instructions to the jury be followed, the court submitted special issues. We find that the submission of these special issues to the jury substantially complied with the requests of appellants. The jury was asked to determine (1) the fair market value of

each parcel without regard to mineral value; (2) the fair market value of the seven-eighths oil, gas, and mineral leasehold estate in each parcel; and (3) the fair market value of the one-eighth royalty interest in each parcel. The jury made its findings accordingly.

There is no merit in the contentions of appellants that the owners of mineral interests were entitled to a separate trial and that evidence of the market value of the property as a whole was not admissible. A condemnation proceeding is an action in rem. It is not the taking of rights of designated persons, but *the taking of the property itself*. Duckett & Co. v. United States, 266 U.S. 149, 151, 45 S.Ct. 38, 69 L.Ed. 216. When property is condemned, the amount paid for it stands in the place of the property and represents all interests in the property acquired. United States v. Dunnington, 146 U.S. 338, 350, 353, 13 S. Ct. 79, 36 L.Ed. 996. The sum determined to be due for the taking is apportioned between the claimants, but, "as between the condemner and the condemnee, the property is valued as a whole." State of Texas v. Harris County, etc., Navigation District, 5 Cir., 158 F. 2d 861, 865; Meadows v. United States, 4 Cir., 144 F.2d 751; Silberman v. United States, 1 Cir., 131 F.2d 715; Cf. City of Waco v. Messer, Tex.Civ.App., 49 S.W.2d 822.

In accordance with state practice, issues both as to the value of the property as a whole and as to the value of each separate interest are sometimes submitted to the jury at the same time. United States v. 1.87 Acres of Land, 3 Cir., 155 F.2d 113; United States v. 250 Acres of Land, 5 Cir., 43 F. Supp. 937, 941; Reeves v. Dallas, Tex.Civ. App., 195 S.W.2d 575. However, we find no authority which holds that surface rights and mineral rights are such separate estates as to require separate trials as to valuation. Cf. Meadows v. United States, 4 Cir., 144 F.2d 751.

It becomes manifest that to uphold appellants' contention that separate valuation trials should be had would bring about confusion and injustice in condemnation cases. Separate trials would open the door to separate awards which might include valuation based on inconsistent uses of the property, and consequent duplication of values.[1]

On appellants' complaint of misconduct of jurors during deliberation of the jury, the court permitted jurors to be summoned. They were placed under the rule and were examined by appellants' counsel as to what happened in the jury room while the jury was considering its verdict. There is no evidence that anything complained of was caused by appellee or by the acts or interference of anyone not a member of the jury. The only evidence adduced was with reference to chance remarks made by jurors to one another while considering the case. This attempt of appellants to thus impeach the verdict of the jury was improper and without sanction in federal practice. The court properly overruled the motion for a new trial based on the alleged misconduct. McDonald v. Pless, 238 U.S. 264, 35 S.Ct. 783, 59 L.Ed. 1300; Hyde v. United States, 225 U.S. 347, 382, 384, 32 S.Ct. 793, 56 L.Ed. 1114, Ann.Cas.1914A, 614; United States v. 4,925 Acres of Land, 5 Cir., 143 F.2d 127; Brabham v. State of Mississippi, 5 Cir., 96 F.2d 210; Cf. Southern Pacific Co. v. Klinge, 10 Cir., 65 F.2d 85.

There is abundant evidence in the record to support the verdict of the jury. Moreover, every ruling of the court was in favor of appellants save the request to try the issues as to mineral values and surface values separately.

The judgment is affirmed.

---

[1] The fact that the minerals, if any, are located beneath the surface of the parcels condemned cannot be ignored. For example, Thompkins, the owner of the surface of parcel 80, claimed a value of $350 to $400 per acre on the theory that the best use of the tract was for subdivision purposes. The owners of the mineral interests on that same parcel claimed values of $350 to $700 per acre for the leasehold and $175 to $300 per acre for the royalty interest. Certainly, the surface could not be used for a residential subdivision if oil wells were drilled and producing. These are inconsistent uses.