

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-29-2005

# USA v. 6.45 Acres of Land

Precedential or Non-Precedential: Precedential

Docket No. 03-2305

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"USA v. 6.45 Acres of Land" (2005). *2005 Decisions.* Paper 1260.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/1260

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 03-2305

UNITED STATES OF AMERICA,
                                        Appellant

v.

6.45 ACRES OF LAND, more or less, situated
in Cumberland Township, Adams County,
Commonwealth of Pennsylvania;
HANS G. ENGGREN; CHRISTINA A. ENGGREN,
Husband and Wife, their Heirs and/or assigns;
UNKNOWN OWNERS; UNKNOWN LESSEES

Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civil Action No. 99-cv-02128)
District Judge: Honorable Sylvia H. Rambo

Argued June 30, 2004

Before: AMBRO, ALDISERT
and STAPLETON, Circuit Judges

(Opinion filed: April 29, 2005)

Thomas L. Sansonetti
   Assistant Attorney General
Todd S. Aagaard, Esquire (Argued)
Robert Oakley, Esquire
Marc Gordon, Esquire
United States Department of Justice
Environment & Natural Resources Division
P.O. Box 23795
L'Enfant Plaza Station
Washington, DC   20026

      Attorneys for Appellant

Lawrence R. Wieder, Esquire (Argued)
David E. Lehman, Esquire
NcNees, Wallace & Nurick
100 Pine Street
P.O. Box 1166
Harrisburg, PA   17108-1166

John C. Goodchild, III, Equire (Argued)
Catherine E. Gillespie, Esquire
Marisel Acosta, Esquire
Timothy D. Mygatt, Esquire
Morgan, Lewis & Bockius
1701 Market Street
Philadelphia, PA   19103

Irwin W. Aronson, Esquire
Willig, Williams & Davidson
212 Locust Street, Suite 400
P.O. Box 11997
Harrisburg, PA   17108

      Attorneys for Appellees

---
OPINION OF THE COURT
---

AMBRO, <u>Circuit Judge</u>

The United States appeals from the District Court's judgment awarding compensation to Overview Limited Partnership ("Overview") and Hans and Christina Enggren (the "Enggrens") pursuant to the Government's taking of 6.45 acres of land in the Gettysburg National Military Park. The Government asserts that the District Court impermissibly failed to apply the "unit rule" of valuation in determining the fair market value of the condemned land (instead valuing separate interests rather than the aggregate interests as a single unit). Moreover, the Government contends that in so doing the District Court awarded compensation to Overview and the Enggrens that exceeded, in aggregate, the amount the United States could fairly be obliged to pay. In essence, the Government argues that the District Court strayed from the clear path of the unit rule and, mired in a jungle of valuations of partial interests, "double counted" a key component of its estimate of the land's value, in effect charging the Government twice. Because we agree, we reverse the judgment of the District Court and remand for further proceedings.

## I.    Facts and Procedural History

### A.    The Condemned Properties

On December 12, 1999, the United States filed a complaint in condemnation to acquire approximately 6.45 acres of land within the boundaries of the Gettysburg National Military Park.  The condemned land consisted of (1) two fee simple interests, designated Tract 4-203 and Tract 4-204, and (2) multiple right-of-way easements in three tracts of land, designated Tract 4-108, Tract 4-109, and Tract 4-220 (collectively, the "Condemned Properties").

Tract 4-203 was owned in fee simple by the Enggrens.[1] In 1972, the Enggrens leased this parcel, which was unimproved at the time, to Overview for a term of 99 years.[2]  Overview intended to build on Tract 4-203 an observation tower overlooking the Gettysburg Battlefield and to operate the tower as a tourist attraction.  Accordingly, the lease provided that Overview would own, insure, and pay all applicable taxes with respect to the proposed tower.  At the end of the lease term, the Enggrens would retake possession of the land and would also

---

[1] The right-of-way easement over Tract 4-220, which was appurtenant to Tract 4-203, was also owned by the Enggrens.

[2] The initial parties to the lease were the predecessors-in-interest to the parties before us.

4

take ownership of the tower. Construction of the 307-foot observation tower was completed in 1974.

Tract 4-204 was owned in fee simple by Overview.[3] On this land, which lay adjacent to Tract 4-203, Overview owned and operated a gift shop, restaurant, and parking lot. These improvements were operated in conjunction with the tower as a tourist attraction. Overview generated revenue from the gift shop and restaurant, and through fees for admission to the tower. Overview also received rent from two cellular phone companies for space on the tower subleased for cellular antennae.

### B.    Trial Proceedings

The Declaration of Taking, which transferred title in the Condemned Properties to the United States, was filed by the Government on May 17, 2000.[4] The Government thereafter deposited with the registry of the District Court an estimate of just compensation for the Condemned Properties–$3 million. Because the Enggrens and Overview contested the fairness of the Government's estimated payment, a bench trial was set for

---

[3] Overview also owned the two right-of-way easements over Tract 4-108 and Tract 4-109. These easements were appurtenant to Tract 4-204 and provided access to the tower.

[4] The improvements on the Condemned Properties were demolished on July 3, 2000.

5

the sole purpose of determining and awarding just compensation.

Prior to trial, the parties submitted briefing on the appropriate methodology[5] for valuing the Condemned Properties. As a result of that briefing, the District Court issued a pretrial order on April 13, 2001, which stated in relevant part:

> The highest and best use evaluation for the properties at issue can be determined in either of the two following ways:
>
> a) as a single unit together with their appurtenant easements, or

---

[5] Appraisal "methodology" can mean two things in the context of this litigation. The first kind of methodology, which is not in dispute on appeal, pertains to one of the accepted theories of valuation. This choice varies with the nature of the property under appraisal, and experts may reasonably disagree over which will yield the most accurate estimate in any particular case. The second meaning of 'methodology' pertains to the legal procedure by which an award of just compensation for the United States' taking is determined. This second type of methodology implicates the unit rule, which is the subject of this appeal. To avoid confusion, we refer to the unit rule not as a methodology but as a "procedure," because the determination as to its applicability is one made by a court as a matter of law rather than by an appraiser.

b) two appraisals – one covering tract 4-203 and another appraisal covering Tract 4-204, each with their appurtenant easements . . . .

A three-day bench trial was held in November 2001, at which three expert appraisers testified to the fair market value of the Condemned Properties: David Lennhoff for the Government, Robert Von Ancken for Overview, and William Siverling for the Enggrens. Lennhoff and Von Ancken, in accordance with the first option available under the District Court's pretrial order, offered appraisals that valued the Condemned Properties as a single unit. Siverling purported to take the second option, but rather than offer an appraisal of Tract 4-203 (with its appurtenant easement), he appraised only the value of the Enggrens' legal interest in that parcel.

Lennhoff testified that the most reliable methodology by which to appraise the Condemned Properties was the income capitalization approach.[6] Using this approach, Lennhoff

---

[6] Under the income capitalization approach, the net income that a tract of land can produce in a typical year is divided by a factor called a "capitalization rate." The capitalization rate is a ratio representing the relationship between the land's annual net income and its value. According to Lennhoff, this ratio indicates how many times the annual net income a potential buyer would pay for the land. The quotient of these figures, Lennhoff testified, represents the fair market value of the land.

7

testified that the Condemned Properties could generate an estimated annual net operating income of $227,878. He then divided this amount by an estimated capitalization rate of 10.5% in order to conclude that the fair market value of the Condemned Properties was approximately $2.2 million. Lennhoff also valued the Condemned Properties using a cost approach.[7] Applying this alternative approach, he testified that the fair market value of the Condemned Properties would be $2.9 million. Finally, Lennhoff compared the income capitalization approach with the cost approach and determined that the former method was a more reliable indicator of the value of the Condemned Properties. Nonetheless, he adopted a value that represented a "reasonable rounding" between the two approaches, yielding a final conclusion that the Condemned Properties were worth $2.5 million.

Overview's appraiser, Von Ancken, testified that the cost approach, and not the income capitalization approach, was the more appropriate methodology for calculating the value of the

*See generally* Jacques B. Gelin & David W. Miller, *The Federal Law of Eminent Domain* § 4.1 at 200, 205-06 (1982) ("Gelin & Miller").

[7] The cost approach (also known as the reproduction approach), according to Lennhoff, values a tract of land by estimating the value of the land as vacant, adding the cost of the improvements, and then deducting any depreciation in the improvements. *See generally id.* at 200, 214-18.

8

Condemned Properties. According to Von Ancken, the cost approach resulted in an $11.13 million valuation of the Condemned Properties. While that estimate was appropriate in Von Ancken's opinion, he nonetheless engaged in an income capitalization analysis for the limited purpose of calculating (for use under the cost approach) certain depreciation amounts with respect to improvements on the Condemned Properties. Von Ancken's income capitalization "modification" to his appraisal resulted in an estimated fair market value of $11.5 million. Von Ancken explicitly testified that his calculations, using both the cost and income capitalization approaches, represented the total fair market value of the Condemned Properties as a single unit.[8]

---

[8] At the outset of the trial, Overview also sought to bring to the attention of the District Court its allegation that in 1994 the Government engaged in negotiations with Overview to acquire the Condemned Properties. Overview claimed that during these negotiations the United States apparently relied on an appraisal valuing the Condemned Properties at $6.6 million. The United States moved *in limine* to exclude mention of the earlier appraisal because there was no evidence of its existence and because it would be extremely prejudicial to the United States. Overview indicated that it wished to discuss, at trial, the earlier negotiations that may have preceded an oral purchase offer by the United States. The Government denied that any oral offer was made. The District Court took the matter under advisement. Assuming the appraisal mentioned by Overview exists, it does not appear to have been entered into evidence or relied upon by the Court. We therefore do not consider it on appeal. *See* Fed.

9

Siverling, the Enggrens' expert, did not value the Condemned Properties as a single unit. Nor did he calculate the total value of Tract 4-203 (with its appurtenant easement) as a unit. Rather, he testified that his appraisal consisted of the value of the Enggrens' lease with Overview. He did so using two methods. First, he estimated the amount of the annual rent payments the Enggrens would receive from Overview during the year halfway through the 99-year lease period (the 45th year) and capitalized that income using a capitalization rate of 10%. This yielded a value of $2.7 million. Second, he calculated the net present value of the cash flow to the Enggrens under the remaining years on the lease using a discount rate of 9.5%. This alternative calculation resulted in a value of $2.5 million. Siverling then averaged the results of the two methods and concluded that the Enggrens' legal interest in Tract 4-203 and its appurtenant easement was worth $2.6 million.

## C.    District Court's Findings

The District Court weighed the testimony of all three expert appraisers and decided that the income capitalization approach used by Lennhoff was the most appropriate method of valuation. However, the Court opined that, contrary to Lennhoff's own testimony, the income capitalization approach did not actually result in the fair market value of the Condemned Properties as a whole. Rather, the Court stated its belief that

R. App. P. 10(a).

10

"[w]hile the United States and Overview purported to value the property as a whole, their capitalization of income approach was based only on the value that a hypothetical buyer would expect to earn from operating the . . . [t]ower, or Overview's interest." In accordance with that belief, the Court stated that it would use Lennhoff's approach to calculate the value of Overview's interest in the Condemned Properties (*i.e.*, the value of Overview's fee simple interest in Tract 4-204 and its appurtenant easements plus the value of Overview's leasehold interest in Tract 4-203) and that it would calculate separately the value of the Enggrens' interest based on Siverling's testimony. According to the Court, this procedure was consistent with its April 13, 2001 order that allowed the parties to value the Condemned Properties either as a single unit or as two different units of land.

With respect to its calculation of the value of Overview's interest, the District Court made factual determinations regarding the projected income and expenses attributable to the Condemned Properties using a combination of both Lennhoff's and Von Ancken's testimony. Applying Lennhoff's methodology, the Court concluded that the value of Overview's interest in the Condemned Properties was $3.932 million. The Court then proceeded to calculate separately the value of the Enggrens' interest. In so doing, it determined that the best way to do this was to use the income capitalization approach to calculate the present value of the future income the Enggrens could expect to receive from their lease to Overview. Using this

11

approach, the Court concluded that the value of the Enggrens' interest in the Condemned Properties was $2.7 million.

Accordingly, the District Court entered a final judgment against the United States in the amount of $6.632 million—$3.932 million in favor of Overview and $2.7 million to the Enggrens. The Government timely appealed.[9]

## II. Discussion

The Government contends that the District Court committed legal error when it purported to determine its award of just compensation by separately valuing the distinct legal interests of Overview and the Enggrens in the Condemned Properties. According to the Government, the Court should have followed the "unit rule," calculating the fee simple value of the Condemned Properties (as if in single ownership) without regard to the constituent legal interests. The Government further argues that the District Court's valuation, by its own terms, was clearly erroneous.

We exercise plenary review over the District Court's conclusions of law and its application of the law to the facts.

---

[9] The District Court exercised jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1345 because the United States was the plaintiff under authority granted to it by federal law. We exercise appellate jurisdiction under 28 U.S.C. § 1291.

*Louis W. Epstein Family P'ship v. Kmart Corp.*, 13 F.3d 762, 766 (3d Cir. 1994). We review the District Court's factual findings for clear error. *Int'l Ass'n of Machinists & Aerospace Workers v. US Airways, Inc.*, 358 F.3d 255, 259 (3d Cir. 2004).[10]

"The United States has the authority to take private property for public use by eminent domain, . . . but [it] is obliged by the Fifth Amendment to provide 'just compensation' to the owner thereof." *Kirby Forest Indus., Inc. v. United States*, 467 U.S. 1, 9 (1984) (citing *Kohl v. United States*, 91 U.S. 367, 371 (1876)).[11] In general, "just compensation" means "the fair

---

[10] "Factual findings are clearly erroneous if the findings are unsupported by substantial evidence, lack adequate evidentiary support in the record, are against the clear weight of the evidence or where the district court has misapprehended the weight of the evidence." *United States v. Roman*, 121 F.3d 136, 140 (3d Cir. 1997) (internal quotation omitted). A finding of fact is also considered "clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Estate of Spear v. Commissioner*, 41 F.3d 103, 114-15 (3d Cir. 1994) (citing *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)).

[11] "The guiding principle of just compensation . . . is that the *owner* of the condemned property 'must be made whole but is

13

market value of the property on the date it is appropriated." *Id.* at 10. "Under this standard, the owner is entitled to receive what a willing buyer would pay in cash to a willing seller at the time of the taking." *Id.* (internal quotations omitted). While this rule may be comparatively easy to apply when the property condemned by the United States is owned in fee simple by a single owner, that is not our case. Here the taking was of discretely held legal interests. Thus, do multiple interests in this case justify the District Court's departure from the general unit rule of valuation? We hold that they do not. Neither the District Court opinion nor the record presents extraordinary circumstances that justify the exceptional valuation methodology employed. For this reason, it cannot stand.

It is well-established that "[a] condemnation proceeding is a proceeding in rem." *United States v. 25.936 Acres of Land*, 153 F.2d 277, 279 (3d Cir. 1946); *see United States v. Dunnington*, 146 U.S. 338, 352-53 (1892); *Eagle Lake*

---

not entitled to more.'" *United States v. 564.54 Acres of Land*, 441 U.S. 506, 516 (1979) (emphasis in original) (quoting *Olson v. United States*, 292 U.S. 246, 255 (1934)); *see also United States v. L.E. Cooke Co., Inc.*, 991 F.2d 336, 341 (6th Cir. 1993) ("[O]vercompensation is as unjust to the public as undercompensation is to the property owner, and the landowner bears the burden of proving the value of the land." (citing *United States v. 69.1 Acres of Land*, 942 F.2d 290, 292 (4th Cir. 1991))).

14

*Improvement Co. v. United States*, 160 F.2d 182, 184 (5th Cir. 1947). "It is not a taking of rights of persons in the ordinary sense but an appropriation of the land or property itself." *25.936 Acres of Land*, 153 F.2d at 279. When the United States exercises its power of eminent domain, it "takes all interests [in the property] and as it takes the res is not called upon to specify the interests that happen to exist." *A.W. Duckett & Co., Inc. v. United States*, 266 U.S. 149, 151 (1924).[12] In fact, an exercise of eminent domain extinguishes all interests in the condemned land and establishes a new title in the United States. *Id.*; *25.936 Acres of Land*, 153 F.2d at 279. Accordingly, an award of just compensation takes the place of the condemned land and the various legal interests in the land are "treated as though transferred to the award." *25.936 Acres of Land*, 153 F.2d at 279 (citing, *inter alia*, *Dunnington*, 146 U.S. at 351); *see also Meadows v. United States*, 144 F.2d 751, 752, 753 (4th Cir. 1944) ("The value of the property once being determined in a proper proceeding, the sum so determined stands in the place of the property and can be distributed upon the adjudication of the value of the respective interests.").

Recognizing that condemnations proceed *in rem*, we have held that an award of just compensation under federal law

---

[12] Of course, the same cannot be said when the United States takes less than the whole estate. *See Nebraska v. United States*, 164 F.2d 866, 868 n.7 (8th Cir. 1947). There the Government does face an obligation to specify what it is taking.

15

cannot be determined by separately valuing the various legal interests in the land condemned. *See 25.936 Acres of Land*, 153 F.2d at 279. This settled principle, referred to as the "unit rule" or "undivided fee rule," embodies the idea that "when land in which various persons have separate interests or estates is taken by the United States for public use, the amount of compensation to be paid must be determined as if the property was in a single ownership and without reference to conflicting claims or liens." *Id.* (citing *Meadows*, 144 F.2d at 752, 753; *United States v. 576,734 Acres of Land*, 143 F.2d 408, 409 (3d Cir. 1944)); *Bogart v. United States*, 169 F.2d 210, 213 (10th Cir. 1948) ("A condemnation proceeding is an in rem proceeding and when land is taken in which separate interests or estates are owned by two or more persons, as between the public and the owners, it is regarded as one estate."); *Nebraska*, 164 F.2d at 868 ("The general federal rule of compensation for condemnation of a fee is well settled. The measure of 'just compensation' under the Fifth Amendment for the taking of property in fee simple ordinarily is the fair market value . . . of the property in fee ownership as of the time of taking irrespective of the number and kind of interests existing in it."). *But see United States v. City of New York*, 165 F.2d 526, 528 (2d Cir. 1948) (calling into doubt the existence of the unit rule). In prescribing this rule, we have explained that "the value of the separate interests cannot exceed the worth of the whole." *25.936 Acres of Land*, 153 F.2d

16

at 279[13]; *see also United States v. 131.68 Acres of Land*, 695 F.2d 872, 875 (5th Cir. 1983) ("[T]he so-called 'undivided fee rule' . . . provides that the division of a fee into separate interests cannot increase the amount of compensation that the condemnor has to pay for the taking of the fee.").

Under the unit rule, the role of the United States, as condemnor, ends once the total amount of just compensation is determined. Only after the total award is determined is it apportioned among the holders of various legal interests in the condemned property. *See United States v. 1.377 Acres of Land*, 352 F.3d 1259, 1269 (9th Cir. 2003) ("The 'undivided fee rule' essentially operates by permitting the governmental authority to condemn property by providing just compensation, then allowing the respective interest holders to apportion the award among themselves, either by contract or judicial intervention . . . . Once the government provides just compensation for the condemned property, its role is at an end

---

[13] Overview seizes upon this language in *25.936 Acres of Land*, and insists that the unit rule is therefore nothing more than a proscription against the double-counting of interests in land when determining just compensation. Given the weight of authority, as well as our express statement of the unit rule in *25.936 Acres of Land*, we cannot accept Overview's proposition. To the contrary, we have applied the unit rule as the legal procedure by which just compensation is to be determined and apportioned.

17

. . . ." (internal citations omitted)); *Eagle Lake Improvement Co.*, 160 F.2d at 184 ("The sum determined to be due for the taking is apportioned between the claimants, but, as between the condemnor and the condemnee, the property is valued as a whole." (internal quotation omitted)); *Nebraska*, 164 F.2d at 868 ("[T]he guarantee of the Fifth Amendment is regarded as being satisfied generally where the cash value of property taken in fee is substituted for it and the cash is allocated or apportioned among the respective estates or interests on the basis of their relative values."); *Meadows*, 144 F.2d at 753 ("The value of the property once being determined in a proper proceeding, the sum so determined stands in the place of the property and can be distributed upon the adjudication of the value of the respective interests."); *Carlock v. United States*, 53 F.2d 926, 927 (D.C. Cir. 1931) ("It is a fundamental principle, governing condemnation proceedings, where several interests are involved, such as estates for life, or in remainder, or leaseholds, or in reversion, in the property to be condemned, all should be combined in determining the value of the fee, after which the total value of the fee can be subdivided in satisfaction of the values fixed upon the various interests involved.").

This does not mean that the fact of divided ownership in condemned property is to be wholly disregarded. When the value of constituent legal interests in property is relevant to the factfinder's determination of the value of the land as a whole (as if in single ownership), such evidence may be considered. *Cf. United States v. 158.76 Acres of Land*, 298 F.2d 559, 561 (2d

18

Cir. 1962) ("[I]f the condemned land contains a mineral deposit, . . . it is proper to consider this fact in determining the market value of the land as a whole, but it is not permissible to determine separately the value of the mineral deposit and add this to the value of the land as a unit."); *Meadows*, 144 F.2d at 753 (noting that evidence of the value of a separate timber interest in the condemned land may be properly considered in determining the value of the land as a whole).

Nor do we hold that the unit rule is to be applied rigidly in all cases.  As the Supreme Court has noted in the eminent domain context, "[e]xceptional circumstances will modify the most carefully guarded rule . . . ." *Mississippi & Rum River Boom Co. v. Patterson*, 98 U.S. 403, 408 (1878).  The same can be said with respect to application of the unit rule.  *See United States v. 499.472 Acres of Land*, 701 F.2d 545, 549 (5th Cir. 1983) (permitting departure from the unit rule in certain "rare and compelling circumstances"); *United States v. Corbin,* 423 F.2d 821, 828 (10th Cir. 1970) ("[W]e recognize that departure from the unit rule is permissible in unique situations."); *Nebraska*, 164 F.2d at 869 ("Of course, like any other, the [unit] rule is not one that is autocratically absolute.") (citing *Mississippi & Rum River Boom Co.*, 98 U.S. at 408)).

In some instances, a departure may be necessary to avoid grossly unjust results.  *See, e.g.*, *United States v. Welch*, 217 U.S. 333, 338 (1910) (in a taking of a servient tenement by the United States, "the value of [an] easement [could] not be

19

ascertained without reference to the dominant estate to which it was attached"); *Boston Chamber of Commerce v. Boston*, 217 U.S. 189, 195 (1910) (in a taking by the City of Boston, it was not unconstitutional for a commonwealth court to disregard the value of the unencumbered estate as a whole where there was a great disparity between the value of the unencumbered whole and the value of the estate in its actual state of title). In other instances, departure from the unit rule may simply be a practical necessity. *See, e.g.*, *Corbin*, 423 F.2d at 828-29 (in the taking of a fish farm by the United States, the topography of the land made it impossible to appraise all aspects of value on the land by any one appraisal methodology). "But it is to be emphasized that the general [unit] rule . . . is a 'carefully guarded' one and that only in rare and exceptional types of situations [should] departures from it be[] permitted." *Nebraska*, 164 F.2d at 869.

In this case, the District Court's determination of just compensation departed from the unit rule. As indicated above, the Court decided that, rather than value the Condemned Properties as if in single ownership, it would instead value the separate *interests* of Overview and the Enggrens in the Condemned Properties.[14] The Court's decision failed to

---

[14] The District Court expressed its belief that this procedure was permitted by its pretrial order of April 13, 2001, which allowed the parties to present valuation evidence for the Condemned Properties either as a single unit or as two different units of land. According to the Government, this constituted a

20

describe the unit rule, its obligation to apply the unit rule by default, or any reason to depart from the rule. The Court certainly did not find an extraordinary circumstance justifying its departure from the rule. Adherence to the unit rule here, to repeat, would have meant the two-step process of valuing the Condemned Properties as if in single ownership and thereafter proceeding to apportion that award among the interest-holders in the Condemned Properties.[15] What the District Court could not do, consistent with the unit rule, was determine the just compensation owed by the United States by computing separately the value of the various constituent legal interests in

misinterpretation of the Court's April 13th order insofar as the order referred to two separate *units* (*i.e.*, Tract 4-203 and Tract Tract 4-204, each with appurtenant easements) and not two separate *interests*. While we agree with the Government's position, we note that the proper construction of the order is irrelevant to our ultimate conclusion that the valuation procedure used by the District Court improperly ignored the unit rule. That is, we assess the valuation procedure used notwithstanding the existence of the April 13th order.

[15] We note that the District Court could have separately valued Tract 4-203 and Tract 4-204 while still adhering to the unit rule (valuing each unit as if it was held in fee simple ownership). The unit rule prohibits deconstruction of the interests in a "unit."

the Condemned Properties.[16]

This does not end our analysis, however, as we must affirm the judgment of the District Court notwithstanding its failure to adhere to the unit rule if we determine that this was "harmless" (that is, if the award of compensation would have been the same had it followed the rule). *See* 28 U.S.C. § 2111 ("On the hearing of any appeal . . . in any case, the court shall give judgment after an examination of the record without regard to errors or defects which do not affect the substantial rights of the parties."); Fed. R. Civ. P. 61 ("The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties."). A non-constitutional legal error will be deemed harmless "if it is highly probable that the error did not affect the

---

[16] The Enggrens insist that the District Court did not, in fact, value their legal interest in Tract 4-203, but rather valued the parcel itself. Accordingly, they contend that the District Court's decision with respect to them was in accordance with the unit rule, and they request that the judgment be affirmed. We note, however, that Siverling, the Enggrens' witness, expressly testified that he appraised only the Enggrens' interest in Tract 4-203—in effect, the present value of Overview's rent payments under the lease. Moreover, the District Court's opinion stated explicitly that its award in favor of the Enggrens amounted to the value of the Enggrens' legal interest in the Condemned Properties. Accordingly, we deem the Enggrens' argument unpersuasive.

judgment." *Gen. Motors Corp. v. New A.C. Chevrolet, Inc.*, 263 F.3d 296, 329 (3d Cir. 2001).

We cannot conclude that it is "highly probable" that the District Court would have reached the same result had it adhered to the unit rule. As we indicated above, one of the principles underlying that rule is that "the value of the separate interests [in condemned land] cannot exceed the worth of the whole." *25.936 Acres of Land*, 153 F.2d at 279. Our review of the record leads us to conclude, however, that it is quite likely that the sum of the District Court's independent awards—its assessment of "the value of the separate interests"—substantially exceeded the value of the whole.

Specifically, the District Court erroneously construed Lennhoff's appraisal of Tract 4-203 as having excluded the Enggrens' interest in that land, and, as a result, it "charged" the Government for the Enggrens' interest twice (once for Overview and once for the Enggrens). This occurred as follows. Under its chosen method for appraising Tract 4-203—the income capitalization approach—the District Court applied a capitalization rate to the land's expected net income. The Court arrived at the land's expected net income by adding up the sources of gross income and deducting expenses. When determining the expenses, the Court considered the testimony of both Lennhoff and Von Ancken. It concluded that Lennhoff's method, which estimated expenses as a flat 60% of the income represented by admission to the tower, was the more sound.

23

Accordingly, the Court employed Lennhoff's formula for expenses when it deducted them from gross income.

In his testimony, Lennhoff explicitly stated that the 60% of admission receipts formula he used for expenses *did not include lease payments*. He explained that because he was valuing the *fee* as a whole, lease payments were not considered an expense but merely a transfer of funds between interest holders that would cancel out under a unit valuation. Because Lennhoff's task was neither to appraise Overview's interest nor the Enggrens' interest, but rather the composite value of all interests, he did not count as an expense what was simply a transfer of value between interest holders that had no bearing on the land's inherent capacity to generate income.

Despite Lennhoff's representations, the District Court construed his expense formula as "based only on the value that a hypothetical buyer would expect to earn from operating the . . . [t]ower, *or Overview's interest*." (Emphasis added.) Having already veered off the unit rule path, with this construction of Lennhoff's analysis the District Court's valuation reached a dead end. Because Lennhoff did not deduct lease payments as an expense to Overview (contrary to what the District Court thought, he simply valued Trust 4-203 as a whole unit), his appraisal methodology did not exclude—but rather included—the value of the Enggrens' interest in those payments. By proceeding to add to its estimation of just compensation a separate valuation of the Enggrens' interest (in the form of a

24

capitalization of the income they could have expected to earn in lease payments over the life of the lease), the Court double-counted the substantial value of the lease. This error, resulting (in our estimation) from the District Court's failure to follow the unit rule, was prejudicial.[17]

## III.    Conclusion

We reverse the judgment of the District Court and remand for further proceedings consistent with this opinion.

---

[17] The Government convincingly argues that the District Court's $3.932 million valuation of Overview's interest in the Condemned Properties should actually have represented the *total* value of the land. If so, the aggregate $6.632 million of just compensation awarded includes "$2.7 million worth of prejudice."